IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal Action No. 07-207-03 |
| | : | |
| v. | : | |
| | : | |
| BARRY LITTLE | : | Civil Action No. 12-2005 |

## MEMORANDUM

**Padova, J.**                                                                                    **June 17, 2013**

Defendant Barry Little has filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, seeking to have his sentence vacated on the ground that his trial counsel was ineffective in failing to investigate an alibi defense. We held evidentiary hearings on the Motion on April 2, April 11 and April 25, 2013. For the following reasons, we now deny Defendant's Motion.

## I.      BACKGROUND

The Superseding Indictment in this case charged Defendant and two co-conspirators with one count of conspiracy to interfere with interstate commerce by robbery, in violation of the Hobbs Act, 18 U.S.C. § 1951(a), (b)(1) and (b)(3), one count of interference with interstate commerce by robbery and aiding and abetting, in violation of the Hobbs Act, 18 U.S.C. § 1951(a), and 18 U.S.C. § 2; and one count of using or carrying a firearm during and in relation to a crime of violence and aiding and abetting, in violation of 18 U.S.C. § 924(c)(1)(A) and 18 U.S.C. § 2. The charges arose out of a July 4, 2006 armed robbery of a Radio Shack on City Line Avenue in Bala Cynwyd, Pennsylvania. Defendant entered a plea of not guilty and proceeded to trial, where his sole defense was that he was not the third participant in the robbery. On April 16, 2008, a jury convicted Defendant of the robbery and conspiracy counts, but acquitted him on the firearm count.

Following trial, Defendant filed a post-trial motion in which he argued, as he had at trial, that the Government had not proven that he was one of the robbers present in the store at the time of the

robbery. We denied that motion, relying on the substantial trial evidence from which a rational juror could have concluded that Defendant was the third robber, including the testimony of the two co-conspirators and evidence that Defendant's cell phone was in Bala Cynwyd at the time of the robbery. United States v. Little, Crim. A. No. 07-207-3, slip op. (E.D. Pa. Jan. 8, 2009). We held Defendant's sentencing hearing on March 4, 2009 and March 26, 2009, and imposed a sentence of 180 months' imprisonment on each count of conviction, to be served concurrently. Defendant filed a timely appeal, and the Third Circuit affirmed Defendant's conviction on March 29, 2012. United States v. Little, 472 F. App'x 129, 130 (3d Cir. 2012).

Defendant filed the instant § 2255 Motion on April 16, 2012.[1] The Motion asserts just one ground for relief, which is that Defendant's trial counsel was constitutionally ineffective in failing to adequately investigate an alibi defense that Defendant was at a cookout at the time of the robbery. Defendant attached to his Motion an affidavit from the host of the cookout, J.F., who stated that she held the cookout at her home on July 4, 2006, the night of the robbery; that she recalled "seeing [Defendant] in attendance at the cookout;" and that she "believe[d] that it was around 4 pm" that she saw him. (Def. Mem. Attachment.) In a response to Defendant's Motion, the Government stated that it believed that an evidentiary hearing was necessary in order to resolve certain factual issues that Defendant's Motion raised.[2]

We therefore appointed counsel for Defendant on July 19, 2012, and we held hearings on the

---

[1] Defendant initially filed his § 2255 Motion on November 9, 2011, while his appeal was still pending. We dismissed that Motion without prejudice to its refiling after Defendant's judgment of conviction became final.

[2] We are "'required to hold an evidentiary hearing unless the motion and files and records of the case show conclusively that the movant is not entitled to relief.'" United States. v. Lilly, 536 F.3d 190, 195 (3d Cir. 2008) (quoting United States v. Booth, 432 F.3d 542, 545-46 (3d Cir. 2005)).

§ 2255 Motion on April 2, April 11, and April 25, 2013. At the April 25, 2013 hearing, we heard

testimony from J.F., Defendant, and an FBI agent who investigated the Radio Shack robbery.

Thereafter, the Government filed a supplemental response in opposition to Defendant's Motion.

## II.    LEGAL STANDARD

Defendant has moved for relief pursuant to 28 U.S.C. § 2255, which provides as follows:

> A prisoner in custody under sentence of a court established by Act of
> Congress claiming the right to be released upon the ground that the
> sentence was imposed in violation of the Constitution or laws of the
> United States, or that the court was without jurisdiction to impose
> such sentence, or that the sentence was in excess of the maximum
> authorized by law, or is otherwise subject to collateral attack, may
> move the court which imposed the sentence to vacate, set aside or
> correct the sentence.

28 U.S.C. § 2255(a). "Section 2255 does not provide habeas petitioners with a panacea for all

alleged trial or sentencing errors." United States v. Rishell, Crim. A. No. 97-294-1, Civ. A. No. 01-

486, 2002 WL 4638, at *1 (E.D. Pa. Dec. 21, 2001) (citation omitted). In order to prevail on a §

2255 motion, the movant's claimed errors of law must be constitutional, jurisdictional, "a

fundamental defect which inherently results in a complete miscarriage of justice," or "an omission

inconsistent with the rudimentary demands of fair procedure." Hill v. United States, 368 U.S. 424,

428 (1962).

To succeed on an ineffective assistance of counsel claim in a § 2255 motion, a defendant

must satisfy the strict test for such claims that is set forth in Strickland v. Washington, 466 U.S. 668

(1984). The United States Supreme Court held in Strickland that, in order to prove constitutionally

inadequate representation, a criminal defendant must demonstrate both that (1) his attorney's

performance was deficient, i.e., that the performance was unreasonable under prevailing professional

standards, and (2) that he was prejudiced by the attorney's performance.  Id. at  687, 694.

In order to show that counsel's performance is so deficient as to fall below an objective standard of "reasonableness under prevailing professional norms," a defendant must show "that counsel made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687, 688.  "Judicial scrutiny of counsel's performance must be highly deferential." Id. at 689.  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id.  In evaluating counsel's performance, we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

Prejudice is proven if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

A failure to investigate can be a predicate for a successful ineffectiveness claim.  As the Strickland Court explained, trial counsel has a duty to conduct a reasonable investigation:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.  In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigation unnecessary.  In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgment.

Id. at 690-91; see also Culled v. Pinholster, 131 S. Ct. 1388, 1407 (2011) ("There comes a point

where a defense attorney will reasonably decide that another strategy is in order, thus mak[ing] particular investigations unnecessary." (quotation omitted) (alteration in original)). Thus, whether counsel was ineffective in failing to investigate and present an alibi defense will typically depend upon the reasonableness of counsel's investigatory conduct and whether counsel had a reasonable alternative strategy.

## III. DISCUSSION

As noted above, Defendant argues in his Motion that his trial counsel was constitutionally ineffective in failing to investigate his alibi, which was that he was at a friend's cookout at the time of the robbery. The Government maintains that Defendant has failed to establish either that his counsel's performance was deficient or that the alleged failure to investigate an alibi defense caused prejudice to Defendant. We agree with the Government in both respects.

### 1. Deficient Performance

Defendant contends that counsel was constitutionally deficient because he completely failed to investigate Defendant's alibi defense. (Def. Reply ¶ 1; see also id. ("[C]ounsel never attempted to contact any of the alibi witnesses to verify Petitioner's presence at the cookout").) Defendant testified at the evidentiary hearing that he told his counsel prior to trial that he was at a cookout at the time of the robbery. (N.T. 4/25/13, at 36.) Defendant further testified that he gave his counsel the names of potential alibi witnesses, including J.F., as well as phone numbers and/or addresses for certain of the witnesses, but he could not specifically recall whether he provided counsel with a phone number or address for J.F. (Id. at 36, 38-40.) Meanwhile, J.F. testified at the hearing that no lawyer or private investigator ever reached out to her prior to trial to find out what, if anything, she knew about Defendant's whereabouts on the night of the crime. (Id. at 15-16.) According to

Defendant, counsel told him that "he tried to reach people and was unable to" (id. at 41), and, in the end, counsel simply decided not to use an alibi defense (id. at 35, 41).

While these facts support a conclusion that counsel was aware of Defendant's proposed alibi and that counsel opted not to pursue an alibi defense, they do not support Defendant's allegation that counsel completely failed to investigate Defendant's alibi defense. Moreover, other record evidence conclusively demonstrates that counsel did investigate Defendant's purported alibi and was simply unable to confirm it. The record reflects that, on December 11, 2007, counsel advised the Government that he was investigating an alibi defense, and counsel stated in a chambers conference one week later, after the Government moved to disallow the alibi defense as untimely, that he had hired an investigator to try to find an alibi witness. (See Gov't Mot. to Disallow Alibi Defense, at ¶ 3; N.T. 12/18/07, at 2-3.) On December 24, 2007, the investigator prepared a report in which he stated that he had "attempted to obtain a[t] least one alibi witness from the list supplied by client Mr. Barry Little without success." (See Ex. 1 to Gov't Suppl. Resp., at 1.) The report shows that the investigator attempted to contact ten potential alibi witnesses. (Id. at 1-2.) He was unable to obtain contact information for two of them, including J.F. (Id. at 2.) For two others, the contact information the investigator had been given was invalid. (Id.) The remaining individuals either did not wish to cooperate, did not respond to the investigator's calls, or were unable to say where Defendant was at the time of the robbery. (Id. at 1-2.)

The record therefore shows that counsel considered and investigated the possibility of an alibi defense, but did not find a witness that would testify that Defendant was somewhere other than Bala Cynwyd at the time of the robbery. The record therefore conclusively disproves the factual premise of Defendant's ineffectiveness claim, i.e., that counsel completely failed to investigate his alibi

defense.  Moreover, to the extent that Defendant may be arguing not that counsel completely failed to investigate but, rather, that counsel's investigation was simply inadequate,[3] Defendant has not suggested any further investigation that counsel could have or should have conducted upon failing to unearth an alibi using the names and contact information that Defendant provided to him.  We therefore have no basis on which to conclude that counsel's conduct was objectively unreasonable, and find to the contrary that counsel engaged in reasonable investigation under the circumstances presented.  Accordingly, we conclude that Defendant has failed to satisfy the deficient performance prong of the <u>Strickland</u> test, and we reject Defendant's ineffectiveness claim on that basis.

## 2.    Prejudice

We also reject Defendant's ineffectiveness claim on the basis that Defendant has failed to prove any prejudice from counsel's alleged failure to investigate and mount an alibi defense.  In attempting to establish prejudice, Defendant relies exclusively on a single purported alibi witness, J.F., whom counsel never contacted.

The record evidence regarding J.F. is as follows.  J.F.'s affidavit, which is dated June 1, 2011, states in full:

> On July 4, 2006, I hosted a cookout at 3215 N.  25th in Philadelphia.  I recall seeing Barry Little in attendance at the cookout.  To my recollection, I believe that it was around 4pm when I saw him.  I only saw him for this one short moment and do not know what time he arrived or departed.
>
> I was never notified by anyone and questioned about whether Barry

---

[3]While Defendant clarified in his reply brief that his argument is based on a complete failure to investigate (<u>see</u> Def. Reply ¶ 1), he earlier argued that his argument was one that counsel had "inadequately" investigated.  (<u>See</u>, <u>e.g</u>, Def. Mem. at 4 (referring to counsel's "failure . . . to adequately investigate"); <u>id.</u> at 6 (acknowledging that counsel made one failed attempt to contact J.F., and arguing that this was not a "reasonable effort"). )

> Little had attended the cookout.  Had I been summoned to testify, my
> testimony would have mirrored the aforementioned statements.

(Def. Mem. Attachment.)  Defendant called J.F. as a witness at our evidentiary hearing on April 25, 2013.  J.F. testified, consistent with her affidavit, that she had hosted a cookout on July 4, 2006, and that Defendant attended the cookout.  (N.T. 4/25/2013, at 4, 6.)  According to J.F., Defendant arrived "between the hours of 4:00 and 5:00, maybe 5:00 or 6:00," "when the sun [was] begin[ning] to set down," although she admitted that she was "not sure [of] the exact time."  (Id. at 8-10.)  J.F. further testified that "about an hour" after Defendant arrived, the sun had totally set and there was no more sunlight.[4]  (Id. at 20.)  J.F.'s testimony contradicted her affidavit in two notable ways.  First, while J.F. stated in her affidavit that she saw Defendant for only "one brief moment" at the cookout, she testified at the hearing that she spent "about five hours" in Defendant's presence at the cookout.  (Id. at 10-11; see also id. at 25-26 (stating that she saw Defendant several times during the cookout, and that he "stayed with" her and her friends).)  Second, while J.F. stated in her affidavit that she did not know what time Defendant left the cookout, she testified on April 25, 2013, that Defendant left the cookout at approximately 10:00 p.m. to go to a  fireworks show at the Philadelphia Art Museum, which was scheduled to begin around 11:00.  (Id. at 11, 24.)   When questioned about these two discrepancies between her hearing testimony and her affidavit, J.F. testified that the statements in her sworn affidavit were false.  (Id. at 29.)

The Government called FBI Agent John Hess as a witness at the April 25, 2013 hearing.  Hess testified that he investigated the July 4, 2006 armed robbery at the Bala Cynwyd Radio Shack,

---

[4]Following the hearing, the Government submitted records reflecting that sunset in Philadelphia on July 4, 2006 was at 8:33 p.m. and that civil twilight ended at 9:05 p.m. (Exh. A to Gov't Suppl. Resp., at 1)  The end of civil twilight is the time at which artificial illumination becomes necessary to perform ordinary outdoor activities.  (Id. at 2)

and that he also took the witness stand at Defendant's trial to testify about Defendant's cell phone records. (Id. at 44.) Hess testified at the April 25 hearing that police arrived at the scene of the Radio Shack robbery at approximately 4:00 p.m. on July 4, and that the robbers fled the scene at approximately 4:02. (Id. at 45-46.) Defendant's cell phone records reflected that Defendant's cell phone last hit off of a cell phone tower in Bala Cynwyd at 4:04 p.m. (Id. at 46.) At 4:36 p.m., Defendant's cell phone began hitting off of a cell tower at Broad and Lehigh, which is the cell tower closest to Defendant's home. (Id. at 45.) Defendant's phone did not hit off of a tower at 22nd and Lehigh, the closest tower location to the cookout at 3215 North 25th Street, until 9:05 p.m.. (Id. at 46.) About two hours later, at 10:57 p.m., Defendant's phone hit off of a tower next to the Philadelphia Art Museum. (Id.)

Upon consideration of this evidence presented during the April 25 hearing, as well as the trial evidence in this case, we conclude that there is no "reasonable probability" that the result of Defendant's trial would have been different if J.F. had testified. The evidence presented at trial established that the robbers entered the City Line Radio Shack around 3:30 p.m. on July 4, 2006, and commenced the robbery at 4:00 p.m. (See N.T. 4/8/08, at 45.) The robbery itself took only a few minutes and, by no later than 4:15 p.m., the robbers were fleeing the scene of the crime. (See id. at 45, 107-08, 115-16, 120-21.)

Although J.F. testified at the April 25th hearing that Defendant arrived at the cookout sometime between 4:00 and 6:00 p.m., she also testified that Defendant arrived when the sun was setting and that there was no more sunlight about an hour after he arrived. Given that sunset on July 4, 2006 was not until 8:33 p.m., see supra note 4 , J.F.'s overall testimony makes clear that Defendant actually arrived at her party well after 4:00. This assessment of his arrival time is

consistent with Defendant's cell phone records which place him in Bala Cynwyd at 4:04, and do not

show the phone in the vicinity of the cookout until 9:05 p.m. (N.T. 4/14/08, at 214-15; N.T. 4/25/13,

at 46.) Accordingly, contrary to Defendant's assertion, J.F. does not actually provide Defendant with

an alibi for the critical time that the robbery was taking place, that is, at the 4:00 p.m. hour. Under

these circumstances, J.F.'s testimony at trial could not have changed the trial's outcome by creating

a reasonable doubt as to Defendant's presence at the robbery. Not only do we find her testimony

incredible in light of the considerable discrepancies between her affidavit and her testimony but, in

addition, the testimony, taken as a whole, simply does not support a conclusion that Defendant was

at the cookout at 4:00 p.m., when the robbery occurred. We therefore deny Defendant's Motion for

the additional reason that he has failed to establish that there was a reasonably probability that

counsel's alleged deficiency caused him prejudice.

## V.    CONCLUSION

For the foregoing reasons, we deny Defendant's § 2255 Motion. An appropriate Order

follows.

BY THE COURT:

_____
John R. Padova, J.